IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AQUA PENNSYLVANIA, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>AGC CHEMICALS AMERICAS INC.,<br>AMEREX CORPORATION,<br>ARKEMA INC.,<br>ARCHROMA MANAGEMENT LLC,<br>BASF CORPORATION,<br>BUCKEYE FIRE EQUIPMENT COMPANY,<br>CARRIER GLOBAL CORPORATION,<br>CHEMDESIGN PRODUCTS INC.,<br>CHEMGUARD INC.,<br>CHEMICALS, INC.,<br>CLARIANT CORPORATION,<br>CORTEVA, INC.,<br>DEEPWATER CHEMICALS, INC.,<br>DUPONT DE NEMOURS INC.,<br>DYNAX CORPORATION,<br>E. I. DUPONT DE NEMOURS AND COMPANY,<br>KIDDE-FENWAL, INC.,<br>NATION FORD CHEMICAL COMPANY,<br>NATIONAL FOAM, INC.,<br>THE CHEMOURS COMPANY,<br>THE CHEMOURS COMPANY FC, LLC,<br>TYCO FIRE PRODUCTS, LP,<br>3M COMPANY, and<br>DOE DEFENDANTS 1-20, fictitious names whose present identities are unknown,<br><br>      Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

  Defendants Tyco Fire Products LP, Chemguard, Inc., and 3M Company ("Removing Defendants"), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Court of Common Pleas, Montgomery County, Pennsylvania, to the United States District Court for the Eastern District of

1

Pennsylvania. As grounds for removal, Removing Defendants allege as follows on personal knowledge as to their own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. Plaintiff Aqua Pennsylvania, Inc. seeks to hold Removing Defendants and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") that Plaintiff alleges were used throughout the Commonwealth of Pennsylvania and thereby contaminated its water systems.

2. Specifically, Plaintiff alleges that per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), were contained in Defendants' AFFF, that these substances were released into the environment in Pennsylvania, and that these same substances appeared in Plaintiff's water supply.

3. Military facilities in Pennsylvania are a plausible source of the AFFF that has allegedly caused Plaintiff's injuries. AFFF sold to the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). "Part 139" civilian airports in Pennsylvania, which are required by law to stock and use MilSpec AFFF, are also a plausible source of the AFFF that has allegedly caused Plaintiff's injuries. Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), Removing Defendants are immune to tort liability for their design and manufacture of MilSpec AFFF and their provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, Removing Defendants are entitled to remove this action in order to have their federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with

2

the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. On October 16, 2020, Plaintiff filed a praecipe for writ of summons in the Court of Common Pleas, Montgomery County, Pennsylvania, and served the writ of summons upon Chemguard and 3M (Ex. A, Praecipe for Writ of Summons). On March 26, 2021, Plaintiff filed the Complaint in the Court of Common Pleas, Montgomery County, Pennsylvania, bearing Docket No. 2020-17550 (Ex. B, Complaint). On April 26, 2021, Plaintiff served copies of the Complaint upon Tyco, Chemguard, and 3M. Removing Defendants are aware of no other proceedings before the Court of Common Pleas in this matter.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(a) and 1441(a) because the Court of Common Pleas, Montgomery County, Pennsylvania, is located within the Eastern District of Pennsylvania.

6. Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Removing Defendants of the "initial pleading." The initial pleading in this action is the Complaint that was filed on March 26, 2021, not the writ of summons. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223 (3d Cir. 2005) (holding that writ of summons served pursuant to Pennsylvania state court procedure does not constitute "initial pleading" for purposes of 28 U.S.C. § 1446(b) and that "[t]he 'initial pleading' … was the complaint, not the summons"). Plaintiff served Removing Defendants with the Complaint on April 26, 2021. Accordingly, removal is timely.

7. Removing Defendants are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See,*

3

*e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

8. Plaintiff generally alleges that Defendants, including Removing Defendants, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors. (Compl. ¶¶ 4, 21–27, 47, 79–80, 121–23.) Plaintiff alleges that these AFFF products were sold to military facilities, civilian airports, and municipal fire departments and training centers "throughout the Commonwealth," and subsequently were released into the environment, purportedly "resulting in widespread PFAS contamination." (*Id.* ¶ 5.) Plaintiff further alleges that the use of Defendants' products contaminated the ground and surface water it relies on to supply its water systems throughout Pennsylvania. (*Id.* ¶¶ 6–7, 12, 47, 80, 97.)

9. Plaintiff asserts claims against all Defendants, including Removing Defendants, for strict liability for defective design (*id.* ¶¶ 196–205), failure to warn (*id.* ¶¶ 206–12), negligence (*id.* ¶¶ 213–23), and trespass (*id.* ¶¶ 224–29). Plaintiff asserts claims against Defendants DuPont and Chemours Co. only for actual and constructive fraudulent transfer (*id.* ¶¶ 230–45). Plaintiff also seeks punitive damages from all Defendants (*id.* ¶¶ 246–49).

10. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and for other Defendants, and a copy is being filed with the Clerk of the Court of Common Pleas, Montgomery County, Pennsylvania.

11. By filing a Notice of Removal in this matter, Removing Defendants do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction

over the person, or venue; and Removing Defendants specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12. Removing Defendants reserve the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

13. Removal here is proper under the federal officer removal statutes, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (d) it can assert a "colorable" federal defense. *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*,

445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15. All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g., Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against removing defendants and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against removing defendants and other AFFF manufacturers). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

---

[1] Following removal, Removing Defendants intend to designate this action for transfer to the MDL. Another action brought by Plaintiff to recover for alleged contamination of drinking water resulting from PFAS releases at two manufacturing facilities in Pennsylvania has already been transferred to the MDL. *In re AFFF*, MDL No. 2873, ECF No. 960 (J.P.M.L. Apr. 1, 2021) (transferring *Aqua Pennsylvania, Inc. v.*

6

A.  **MilSpec AFFF**

16.  Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

17.  The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied

---

*National Foam, Inc.*, No. 2:21-cv-00056 (E.D. Pa.)).

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

19. So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019). The federal government requires Part 139 airports to use MilSpec AFFF. On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[7] Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny

---

[6] *Id.*

[7] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[8] The FAA explained:

> There are several reasons for this requirement. First of all, AFFF has to be compatible when mixed. AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible. AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer. Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire. Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[9]

20.    On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10] Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

21.    Plaintiff alleges that the purported contamination of its water systems is "a result of discharges of Defendants' AFFF/Component Products in the Commonwealth." (Compl. ¶ 12.) Plaintiff alleges that "PFOA and PFOS easily dissolve in water, and thus they are mobile and easily spread in the environment." (*Id.* ¶ 105.) Plaintiff adds that the alleged contamination of its water systems is due to "Defendants' AFFF/Component Products hav[ing] been sold to military facilities, civilian airports, and municipal fire departments and training centers throughout the Commonwealth, used as directed and intended by Defendants, and subsequently released into the environment during fire protection, training, and response activities." (*Id.* ¶ 5.)

---

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

22. Plaintiff provides drinking water to customers in locations in 32 counties in the Commonwealth of Pennsylvania, including but not limited to parts of Berks County, Clearfield County, Cumberland County, Lackawanna County, Lehigh County, Luzerne County, McKean County, Monroe County, Montgomery County, and Venango County.[11]

23. The Pennsylvania Department of Environmental Quality has identified multiple military facilities in counties where Plaintiff provides water as sites of alleged PFOA and PFOS contamination.[12] Those include "Naval Support Activity (NSA) Mechanicsburg" in Cumberland County; the "Tobyhanna Army Depot TCE NPL Site" in Monroe County; and "Former Naval Air Station Joint Reserve Base Willow Grove – Horsham (NPL Site)," "Horsham Air National Guard Station," and "North Penn US Army Reserve Center (Nike PH 91 – Launch)," all in Montgomery County.[13] MilSpec AFFF use at those sites is, at least in part, a plausible source of alleged PFAS contamination giving rise to Plaintiff's claims.

24. In addition, several federally-regulated Part 139 airports that are required to use MilSpec AFFF are located in counties where Plaintiff provides water and are, at least in part, plausible sources of the alleged PFAS contamination giving rise to Plaintiff's claims. Those include Lehigh Valley International Airport (Lehigh County), Wilkes-Barre/Scranton International Airport (Luzerne and Lackawanna Counties), Bradford Regional Airport (McKean County), Dubois Regional Airport (Clearfield County), Venango Regional Airport (Venango County), and Reading Regional Airport (Berks County).[14]

---

[11] *See* Aqua Pennsylvania Service Territory (last visited Apr. 26, 2021), available at https://www.aquaamerica.com/our-states/pennsylvania.aspx.

[12] *See* Department of Environmental Protection, PFAS in Pennsylvania (last visited Apr. 26, 2021), available at https://www.dep.pa.gov/Citizens/My-Water/drinking_water/PFAS/Pages/Locations.aspx.

[13] *Id.*

[14] FAA Part 139 Airport Certification Status List (last updated Apr. 1, 2021), available at

B.  **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

   *1.   The "Person" Requirement Is Satisfied*

25.  The first requirement for removal under the federal officer removal statute is satisfied here because Removing Defendants (corporations) are "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

   *2.   The "Acting Under" Requirement Is Satisfied*

26.  The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

27.  The requirement of "acting under" federal office is met here because Plaintiff's claims, at least in part, challenge Removing Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states

---

https://www.faa.gov/airports/airport_safety/part139_cert/.

that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[15] Accordingly, the military has long depended upon outside contractors like Removing Defendants to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that removing defendants and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If Removing Defendants and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

28.     In designing, manufacturing and supplying the MilSpec AFFF at issue, Removing Defendants acted under the direction and control of one or more federal officers. Specifically, Removing Defendants acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[16]

---

[15] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

[16] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

### 3. *The Causation Requirement Is Satisfied*

29. The third requirement, that the defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted); *accord Papp*, 842 F.3d at 813. Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[17] To show causation, a defendant need only establish that an act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties. *Isaacson*, 517 F.3d at 137–38.

30. Here, the Plaintiff's claims arise at least in part from Removing Defendants' production and sale of AFFF manufactured to military specifications for use at military facilities. Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries. Removing Defendants contend that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Removing Defendants and other manufacturers to meet specifications established by the DoD. Military installations and Part 139 airports are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Removing Defendants could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [removing defendants] manufactured and sold, and for which the U.S. military imposes MilSpec standards.

---

[17] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

13

The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where removing defendants' AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

31.     Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiff's alleged injuries and Removing Defendants' actions under color of federal office is clear. It is irrelevant that the Plaintiff does not expressly contend that it has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

    4.     *The "Colorable Federal Defense" Requirement Is Satisfied*

32.     The fourth requirement ("colorable federal defense") is satisfied by Removing Defendants' assertion of the government contractor defense.

33.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."

*Cuomo*, 771 F.3d at 116.[18] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

34.  Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

35.  Removing Defendants have satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Removing Defendants' products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing

---

[18] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to removing defendants); MDL Order 3, at 5 (same); *see also Nessel*, 2021 WL 744683, at *4.

36.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[19] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[20] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining

---

[19] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[20] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[21] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[22] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

37.　　At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government

---

[21] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[22] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

38.     Removing Defendants' use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Removing Defendants for alleged injuries to Plaintiff that were caused in whole or in part by Removing Defendants' compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

WHEREFORE, Removing Defendants hereby remove this action from the Court of Common Pleas, Montgomery County, Pennsylvania, to this Court.

RESPECTFULLY SUBMITTED this 10th day of May, 2021.

LAVIN, CEDRONE, GRAVER, BOYD & DISIPIO

By: *s/Basil A. DiSipio*
Basil A. DiSipio, Esquire (PA ID 28212)
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Email: bdisipio@lavin-law.com
Phone: (215) 627-0303
Fax: (215) 627-2551

*Attorneys for Defendant 3M Company*

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

By: */s/ Mark A. Aronchick*
    Mark A. Aronchick (Pa. ID 20261)
    Jason A. Levine (Pa. ID 306446)
    One Logan Square, 27th Floor
    Philadelphia, PA 19103
    Email: maronchick@hangley.com
    Phone: (215) 496-7002
    Fax : (215) 568-0300

*Attorneys for Defendants Tyco Fire Products, L.P. and Chemguard, Inc.*